IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Prince Nicholas Jervis,            )
    Plaintiff,                        )
                                           )
v.                                            )    1:17cv425 (CMH/IDD)
                                           )
Captain Desaline Perry,         )
    Defendant.                      )

MEMORANDUM OPINION

Prince Nicholas Jervis, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated by Captain Desaline Perry at the Virginia Peninsula Regional Jail ("VPRJ").[1] By Orders dated June 2 and August 14, 2017, plaintiff was directed to particularize and amend his complaint. Plaintiff filed his second amended complaint on August 22, 2017; however, plaintiff failed to state a claim upon which relief can be granted with respect to several of his claims. By Order dated October 20, 2017, plaintiff's Eighth Amendment excessive force and deliberate indifference claims, as well as his Fourteenth Amendment claims concerning his placement in segregation and missing property, were dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.[2]

---

[1] In his complaint and subsequent pleadings, plaintiff argues that he is innocent. To the extent plaintiff is challenging his convictions, such claims are not properly raised in a § 1983 complaint. Plaintiff must file a 28 U.S.C. § 2254 petition once he has exhausted his claims in state court.

[2] In dismissing these claims, the Court relied on, among other things, the attachments to plaintiff's complaint, which included a May 16, 2017 Memorandum from the Virginia Peninsula Regional Jail Disciplinary Hearing Office that detailed the circumstances leading up to and the eventual extraction of plaintiff from his cell on May 4, 2017. Dkt. No. 11-1. According to plaintiff's annotation on the top of the May 16, 2017 Memorandum, the exhibit was attached "to prove what happen[ed] on 05-04-2017." Dkt. No. 11-1. "[I]f a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim." Goines v. Valley Cmty. Services Bd., 822 F.3d

Plaintiff's Fourteenth Amendment claim relating to his modified diet was allowed to proceed against Captain Perry. Dkt. No. 22. Perry has filed a motion for summary judgment, as well as a memorandum of law with supporting exhibits. Dkt. Nos. 30–31. Plaintiff filed a response and Perry replied.[3] Dkt. Nos. 33-34. Plaintiff has also filed a pleading titled "My Statement of My Claim," which was docketed as a motion to Amend/Correct; however, a majority of this pleading is devoted to refuting the arguments made by Perry in her reply. Dkt. No. 35. Accordingly, plaintiff's motion to Amend/Correction, which, in substance, appears to be a response to Perry's rebuttal brief, will be construed as a Motion to File a Surreply, which will be granted, as well as a surreply.[4] Id. For the reasons stated below, defendant Perry's motion for summary judgment will be granted.

---

159, 166 (4th Cir. 2016). Because plaintiff attached the Memorandum "to prove what happen[ed] on 05-04-2017," the Court presumed that he adopted its contents as true, and applied the "exhibit-prevails" rule to resolve any inconsistent allegations. See id. at 167. Similarly, the exhibits attached by plaintiff to the complaint defeated his Fourteenth Amendment claims for loss of property because they revealed that a post deprivation process was available for the alleged loss or confiscation of his property, and that he availed himself of that process.

[3] In his response, plaintiff advances several new grounds in support of his remaining claim, including that Capt. Perry "treated [him] differently because of [his] nationality," violated his "religious rights," and lied "under every circumstance." Dkt. No. 33. He also rehashes several claims previously dismissed in the October 20, 2017 Order and states several entirely new claims; however, plaintiff's newly raised claims are not discussed here because it is well accepted that a plaintiff, even one proceeding pro se, cannot amend his complaint by asserting new claims in an opposition brief to a motion for summary judgment. Butts v. Ofogh, 2:09cv140 (E.D. Va. Mar. 1, 2010) (citing Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cit. 1996) (holding that a complaint cannot be amended by a brief in opposition to a motion for summary judgment)). Plaintiff has also attached several unsworn documents in support of his opposition. Dkt. No. 33.

[4] In addition, Perry filed a pleading styled "Defendant Perry's Memorandum in Opposition to Plaintiff's March 20, 2018 Filing [Dkt. No. 35]," and plaintiff filed a pleading styled "Rebuttal." Dkt. Nos. 36–37. The rebuttal, like plaintiff's response in opposition to the motion for summary judgment, is discursive, makes several new claims, and discusses irrelevant facts. In support of his rebuttal, plaintiff has attached several irrelevant documents that are intended to support his assertion that he is an "innocent man" and he did not "do anything to be in jail." Dkt. No. 33. For the reasons previously stated, these documents will not be considered at this time, as they would not be admissible in evidence. See Fed. R. Civ. P. 56(c)(4)("An

## I. Background

Plaintiff is currently an inmate at the VPRJ, where he was initially booked on May 2, 2016, released to Central State Hospital on July 20, 2017, and rebooked on August 30, 2017. Dkt. Nos. 31 ¶ 2; 32-2. From September 2016 through September 2017, plaintiff was assigned to a Rastafarian diet and a diabetic vegetarian diet. Dkt. Nos. 31 ¶ 18; 31-6 at 1-2. From May through July 2017, plaintiff was housed in the Special Housing United ("SHU") for disciplinary reasons. Dkt. No. 31 ¶ 19. During that time, "plaintiff began throwing excrement and other substances through his tray slot when officers approached his cell to deliver or retrieve a meal tray." Id. Several officers complained to Capt. Perry about plaintiff's behavior. Id. In addition, Capt. Perry observed plaintiff throwing "feces, and other substances out of his tray slot on a surveillance video." Dkt. Nos. 31 ¶ 21; 31-1 ¶ 15; 31-7. In mid to late June 2017, Capt. Perry contacted Maj. Eaves, explained that plaintiff had been throwing excrement and other substances at jail staff during mealtime, and requested approval to place plaintiff on a nutraloaf diet. Dkt. No. 31-1 ¶ 19. Maj. Eaves granted Capt. Perry's request.[5] Id.; see also Dkt. No. 31-7. Capt. Perry also contacted Nurse Randall in the Jail's medical department to request approval to place plaintiff on a nutraloaf diet, and she granted the request. Dkt. No. 31 ¶ 27. Finally, Capt. Perry contacted Capt. Moore, who supervised the jail's kitchen, and requested approval to place plaintiff on a nutraloaf diet; Capt. Moore approved that request.[6] Dkt. No. 31 ¶ 28.

---

affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.")

[5] Because Maj. Eaves granted her request, Capt. Perry presumes that he obtained approval from the superintendent, as required by jail policy. Dkt. Nos. 31-1 ¶ 19, Ex. 1; 31- 7.

[6] In his notarized opposition to Capt. Perry's motion for summary judgment, plaintiff makes the conclusory statement that "Captain Perry simply lied about getting the approval to change [his] medical Rastafarian diet." Dkt. No. 33 at 3. Plaintiff also includes an unsworn and unnotarized letter purporting to be from "J. Monahan, RN" that states "I don't recall having a discussion with Capt. Perry regarding Mr. Jervis having a nutra loaf diet." Id. Because the

3

On or about June 30, 2017, Capt. Perry drafted a memorandum to Maj. Eaves, confirming that, pursuant to VPRJ Policy No. 3.4.1, plaintiff would receive a nutraloaf diet from June 30, 2017, until dinner on July 7, 2017, to control his disruptive behavior of throwing feces and placing urine and feces on his meal trays. Dkt. Nos. 31-1 ¶ 22; 31- 7. On June 30, 2017, Capt. Perry emailed a copy of her memorandum to several jail employees, and plaintiff began receiving nutraloaf meals that day. Dkt. No. 31-1 ¶ 23. On June 30, and July 1, 2017, plaintiff was served, and took, breakfast, lunch, and dinner; however, he refused all three meals from July 2, through July 6, 2017. Dkt. Nos. 31 ¶ 31; 31-8. In addition, on July 4, 2017, plaintiff refused food offered to him by VPRJ medical staff while they took his vital signs, but he agreed to eat a sandwich, chips, and apple provided to him by medical staff on July 5, 2017. Dkt. Nos. 31 ¶ 32; 31-6. On July 7, 2017, plaintiff refused breakfast and lunch, but received his regular Rastafarian-vegetarian meal for dinner because his nutraloaf diet had been terminated. Dkt. Nos. 31 ¶ 31; 31-8.

*Dietary Accommodation and Meal Service Procedures*

VPRJ inmates may be assigned special diets for religious or medical reasons. Dkt. No. 31-5 at 2, 8-10. To receive a religiously based dietary accommodation, an inmate must submit an Inmate Request Form, describing his or her religious affiliation and any corresponding dietary needs. Id. at 9. Written requests are reviewed by the chaplain and approved by the director of

---

assertions in plaintiff's opposition amount to nothing more than "[u]nsubstantiated, conclusory claims without evidentiary support," and are belied by the evidence submitted by Capt. Perry, the Court cannot reasonably infer that Perry failed to receive the necessary approvals. Braithwaite v. Hinkle, 752 F. Supp. 2d 692, 694 (E.D. Va. 2010), aff'd, 412 F. App'x 583 (4th Cir. 2011); see also Fed. R. Civ. P. 56(c)(4). Similarly, the letter purporting to be from nurse Monahan cannot be considered as evidence in opposition to Perry's summary judgment motion because it is unsworn, it is not based on personal knowledge, and its author is not subject to the penalty of perjury for any misstatements. Fed. R. Civ. P. 56(e); see United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) (unsworn argument does not constitute evidence to be considered in opposition to summary judgment motion).

support services. Id. An inmate may stop receiving a religious diet if jail staff observes him deviating from his dietary restrictions. Id. Medically based special diets must be prescribed by a physician or dentist. Id. at 8. Inmates may be removed from a special medical diet if the approving physician or dentist determines that it is no longer necessary.[7] Id. at 9–10.

Unlike general population inmates, inmates housed in VPRJ's SHU for disciplinary reasons receive meals in their cells: on-duty officers provide a tray to inmates through a tray slot in each cell door, and the officers return to retrieve empty trays, which inmates are instructed to place outside their cells using the tray slot. Dkt. Nos. 31 ¶ 20; 31-5 at 3, 6–7. Inmates in the SHU generally receive the same meals as inmates housed in general population; however, SHU inmates can be placed on a special diet, such as a nutraloaf or other meal substitute, "if they engage in behavior that disrupts food service or other Jail operations." Dkt. Nos. 31 ¶ 22; 31-5 at 3, 6 –7. Pursuant to unwritten policies in effect during Capt. Perry's tenure, she, as the assistant director of security, could "submit a request to her supervisor (the head of security, Maj. Eaves), the medical department, and the kitchen to change an inmate's diet to a nutraloaf diet if the inmate's behavior significantly disrupted food service or other operations of the [j]ail."[8] Dkt. No. 31-1 ¶ 16. In addition, Capt. Perry's subordinates could ask her to submit such a request if they observed an inmate engage in disruptive behavior, and she would submit the request to the appropriate staff members. Id.; see also Dkt. No. 31- 5 at 7 (permitting the superintendent and director of security to establish additional security requirements governing food service in the SHU).

---

[7] Prison regulations do not require that the approving physician or dentist approve a temporary diet change due to an inmate's disruptive behavior; nevertheless, the jail's unwritten policy at the time of the incident required that prison employees seeking to temporarily change an inmate's diet due to disruptive behavior obtain approval from the medical department.

[8] The head of security at VPRJ, Maj. Eaves, was required to obtain approval from the superintendent before granting a special diet modification request. See Dkt. No. 31-5 at 7.

5

To prepare nutraloaves, the kitchen staff uses a recipe provided by the Virginia Department of Corrections, which ensures that each loaf contains the necessary nutrients and requisite amount of calories; in other words, a nutraloaf is not the equivalent of a loaf of bread. Dkt. Nos. 31-1 ¶ 17; 31-5 at 3. Pursuant to VPRJ policy, inmates may receive nutraloaves at every meal for up to seven consecutive days; nevertheless, those assigned to a nutraloaf diet are generally removed from the diet once the jail staff believes that they will no longer engage in the disruptive conduct that necessitated the change. Dkt. Nos. 31-1 ¶ 18; 31-5 at 6. According to Perry, special diets are not a form of punishment, but instead, are used to restore order to the Jail. Dkt. Nos. 31 ¶ 22; 31-5 at 3, 6 –7.

### *Plaintiff's Remaining Claim*

Plaintiff alleges that his diet "is limited starch and they was [sic] given [sic] [him] starch three times a day," which he "did eat" but then he started "to feel a lot of pain in [his] stomuck [sic]." Dkt. No. 11 § IV. According to plaintiff, "when [he] was on hunger strike, it was Captain Perry's orders that [he] must get a looft [sic] of Bread." Id. Plaintiff further alleges that "Captain Perry gives [sic] order that [he] must get a looft [sic] of bread every meal, [and] she never say [sic] when it should stop. She violated [his] rights." Id.

### II. Standard of Review

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material[,]" and a "genuine" dispute of material fact will be found only when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of proof for all relevant issues and must demonstrate that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23

(1986).

Once a moving party has met its burden, the non-moving party must produce specific facts to generate a disputed issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); see Bell v. Kolongo, No. 1:03CV501 (GBL), 2004 WL 3247156, at *7 (E.D. Va. Oct. 25, 2004) (quoting Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993)) ("In a 'summary judgment inquiry[, the Court] scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial.'"), aff'd, 120 F. App'x 985 (4th Cir. 2005). "Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Unsubstantiated, conclusory claims without evidentiary support are insufficient to defeat a summary judgment motion. Braithwaite v. Hinkle, 752 F. Supp. 2d 692, 694 (E.D. Va. 2010), aff'd, 412 F. App'x 583 (4th Cir. 2011). In other words, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50 (internal citations omitted). The court will view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997).

### III. Analysis

Summary judgment in favor of defendant Captain Perry is appropriate because the pleadings, affidavits, and exhibits on file demonstrate that she did not violate plaintiff's Fourteenth Amendment due process rights.

**A. Procedural Due Process**

Individuals maintain some constitutional protections while imprisoned for a crime. Wolff v. McDonnell, 418 U.S. 539, 555 (1974). Thus, prisoners may not be deprived of life, liberty, or

property without due process of law. Haines v. Kerner, 404 U.S. 519 (1972). To prevail on a procedural due process claim, a prisoner must demonstrate (1) that the state deprived him of a protected interest in life, liberty, or property and (2) that the deprivation occurred without due process of law. Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989). If the first element of a due process claim is not satisfied, the procedural protections of the due process clause do not inhere.

Property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). In order to claim a constitutionally protected property right, a plaintiff must have a "legitimate claim of entitlement." Id. at 569. The right to receiving a certain type of meal does not constitute such a legitimate claim of entitlement. See Russell v. Wilkinson, 79 F. App'x 175, 178 (6th Cir.2003) (concluding that plaintiff did not possess a constitutionally protected property interest in receiving kosher meals because prison regulations placed certain restrictions on that accommodation and, "the decision to grant or deny an accommodation [lays] within the discretion of the prison warden"). Specifically, because the regulations that secure plaintiff's right to obtain religious or health-based dietary accommodations place certain restrictions on those accommodations—including prison staff's ability to change an inmate's diet for safety or security reasons—and any request for a special diet is subject to the approval of prison staff, the regulations do not entitle plaintiff to receive a particular diet. Turner v. Sidorowicz, No. 12-CV-7048 NSR, 2014 WL 641454, at *9 (S.D.N.Y. Feb. 18, 2014). Therefore, plaintiff does not have a protected property interest in receiving his "special" meal.

In addition, a prisoner's liberty interests are generally limited to being free from conditions that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472, 484 (1995). A temporary nutraloaf diet does not impose such a hardship. Sanchez v. Allen, 611 F. App'x 792, 795 (5th Cir. 2015) ("[Prisoner's] placement on the food-loaf diet for seven days does not implicate a liberty interest."); see also Turnboe v. Gundy, 25 F. App'x 292, 293 (6th Cir. 2001) (concluding that a food loaf diet does not implicate a due process liberty interest because it is not an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"); James v. Bailey, No. 3:15CV519, 2017 WL 193494, at *7 (E.D. Va. Jan. 17, 2017), aff'd, 694 F. App'x 146 (4th Cir. 2017). Because plaintiff has failed to satisfy the first element of a due process claim, he is not entitled to any procedural protections, and Capt. Perry is entitled to judgment as a matter of law.

**B. Substantive Due Process**

To the extent that plaintiff alleges that Capt. Perry "change[d] [his] special diet to a loaf of bread three times a day" in violation of his substantive due process rights, this claims also fails.

It is well established that the Eighth Amendment "'serves as the primary source of substantive protection to convicted prisoners,' and the Due Process Clause affords a prisoner no greater substantive protection 'than does the Cruel and Unusual Punishments Clause.'" Williams v. Benjamin, 77 F.3d 756, 768 (4th Cir. 1996) (quoting Whitley v. Albers, 475 U.S. 312, 327 (1986)). To establish a claim for cruel and unusual punishment due to conditions of confinement, a plaintiff must allege facts sufficient to show (1) an objectively serious deprivation of a basic human need, that is, one causing serious physical or emotional injury, and (2) that

9

prison officials were deliberately indifferent to that need. Wilson v. Seiter, 501 U.S. 294, 198 (1991). To meet the first prong, plaintiff must allege facts sufficient to show that the condition complained of was a "sufficiently serious" deprivation of a basic human need. Id. Only extreme deprivations will make out an Eighth Amendment claim, and it is plaintiff's burden to allege facts sufficient to show that the risk from the conditions of his confinement was so grave that it violated contemporary notions of decency and resulted in serious or significant physical or emotional injury. Hudson v. McMillian, 503 U.S. 1, 8 (1992). To meet the second prong, plaintiff must allege facts sufficient to show that defendant knew of circumstances from which an inference could be drawn that a "substantial risk of serious harm" was posed to plaintiff's health and safety, that she drew that inference, and then disregarded the risk posed. Farmer, 511 U.S. at 837.

In the prison food context, the Eighth Amendment imposes a duty on prison officials to provide inmates with "adequate food." Farmer v. Brennan, 511 U.S. 825, 832 (1994). "[T]his duty includes an obligation to provide a medically appropriate diet when necessary;" however, the "requirement that prisoners receive special diets when medically appropriate is not without limit." Scinto v. Stansberry, 841 F.3d 219, 233 (4th Cir. 2016). As long as prison officials provide some food that a complaining prisoner is able to eat without compromising his health, the service of that food will not violate the Eighth Amendment. Id. at 233–34.

Without more, Capt. Perry's service of nutraloaf to plaintiff does not violate the Eighth Amendment's prohibition against cruel and unusual punishment. See e.g., LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) ("The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing."); Adams v. Kincheloe, 743 F. Supp. 1385, 1391 (E.D. Wash. 1990) (concluding that the serving of nutra-

loaf to plaintiff for five days was not a violation of the Eighth Amendment). In addition, plaintiff has not adduced any specific facts to generate a disputed issue for trial concerning the medical inappropriateness of his nutraloaf diet. Plaintiff does not allege that nutraloaf is nutritionally or calorically inadequate, and even if he had, the evidence presented by the defendants demonstrates that nutraloaf meets the daily nutritional requirements. Dkt. Nos. 31-1 ¶ 17; 31-5 at 3. Notably, the Inmate Request Form in which plaintiff requests that the jail stop serving "all the starchy foods that they are giving" because they are causing his "numbers [to go] way up past diabetes," was submitted on October 6, 2016, prior to when he started receiving the nutraloaf diet, and while he was receiving a diabetic vegetarian diet. Dkt. Nos. 31-9; 31 ¶ 18; 31-6 at 1-2. Id. In addition, the main symptom of plaintiff's nutraloaf consumption, as alleged in the amended complaint is "a lot of pain in [his] stomuck [sic]." Id. Such a condition is not "sufficiently serious" to constitute an Eighth Amendment violation. Green v. Rubenstein, 644 F. Supp. 2d 723, 740 (S.D. W. Va. 2009) (stating that a sufficiently serious condition is generally "a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain.").

Finally, even if plaintiff's stomach pain was sufficiently serious to constitute an Eighth Amendment violation, plaintiff has failed to produce any evidence supporting his claims that Capt. Perry was deliberately indifferent to his alleged medical need. Indeed, the record reveals that Capt. Perry sought approval from someone in the medical department before placing plaintiff on the nutraloaf diet and that plaintiff was returned to his normal diet as soon as he agreed to change his behavior. Dkt. No. 31 at 24. Accordingly, plaintiff's substantive due

process claims also fails as a matter of law, and Capt. Perry is entitled to summary judgment in her favor[9]

### VII. Outstanding Motions

By letter postmarked January 24, 2018, plaintiff advised the Court that he felt he was being denied medical treatment in violation of his constitutional rights and he "would like to amend [his] claims." Dkt. No. 29. Notably, plaintiff's letter does not name, or even mention, Capt. Perry. Construed liberally, plaintiff's letter will be taken as a motion for leave to amend his amended complaint.

Motions to amend are committed to the discretion of the trial court. Keller v. Prince George's County, 923 F.2d 30, 33 (4th Cir. 1991); Fed. R. Civ. Pro. 15(a)(2). In general leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a)(2), and a pro se litigant in particular "should be afforded every reasonable opportunity to demonstrate that he has a valid claim." Dluhos v. Floating & Abandoned Vessel Known as "New York," 162 F.3d 63, 69-70 (2d 1998). Typically, "'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile,'" Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir.1986)). Because plaintiff's January 24, 2018 motion to amend would be futile, it will be denied. Specifically, plaintiff's January 24, 2018 motion to amend contains new claims totally unrelated to his claims against Capt. Perry. These new claims would not meet joinder requirements because they do not involve any "question of law or fact common" to Capt. Perry or "arise out of

---

[9] In the alternative, Capt. Perry contends that she is entitled to qualified immunity because she did not violate plaintiff's clearly established constitutional rights. Because there was no violation of plaintiff's constitutional rights, there is no need to address Perry's qualified immunity defense.

the same transaction, occurrence, or series of transactions or occurrences" as the instant claim. See Fed. R. Civ. P. 20; Dkt. No. 29.

Plaintiff has also filed a Motion to Reconsider Appointment of Counsel in which he requests that the Court appoint him counsel due to "the enormity of this filing and his lack of knowledge concerning legal procedure," as well as defendant's "factually lacking claims about the events surrounding this matter." Dkt. No. 38.

Plaintiff does not specify the provision under which he seeks reconsideration of the Court's December 5, 2017, and December 13, 2017 Orders denying his requests for counsel, but in deference to his pro se status the motion will be construed as requesting relief pursuant to Fed. R. Civ. P. 59(e), and alternately pursuant to Fed. R. Civ. P. 60(b). Relief under Rule 59(e) is available only "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993). Plaintiff has not established that he is entitled to relief based on any of the grounds provided in Rule 59(e).

Relief under Rule 60(b) is available for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . , misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). The only ground on which plaintiff appears to allege that he is entitled to the appointment of counsel is "fraud . . . misrepresentation, or misconduct" by Capt. Perry; however, apart from his conclusory allegations, plaintiff has failed to establish how Perry's claims were "factually lacking." See Dkt. No. 38. Because plaintiff has not advanced any

13

reason that would justify relief under Rule 59(e) or Rule 60(b), his motion will be denied.

## V. Conclusion

For the foregoing reasons, Plaintiff's Motion to File a Surreply, Dkt. No. 35, and defendant's Motion for Summary Judgment, Dkt. No. 30, will be granted, and summary judgment will be entered in Capt. Perry's favor. Plaintiff's Motion for Reconsideration of Appointment of Counsel, Dkt. No. 38, will be denied. An appropriate Order and Judgment shall issue.

Entered this 2nd day of July 2018.

/s/ Claude M. Hilton
United States District Judge

Alexandria, Virginia